BENNETT and wife, Appellants, vs. CITY OF MILWAUKEE and others, Respondents.

*December 7, 1931—January 12, 1932.*

For the appellants there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *Henry H. Otjen.*

For the respondents there was a brief by *John M. Niven,* city attorney, and *Mark A. Kline,* first assistant city attorney, and oral argument by *Mr. Kline.*

OWEN, J. In assessing benefits resulting from the opening up of a portion of Ellen street in the city of Milwaukee, the city proceeded under the provisions of sec. 62.23, Stats., duly adopted by it, and, especially, sub. (14) of said section. The question presented here is whether the machinery of sec. 62.23 is available to cities in opening up a plain, ordinary street. We conclude that it is not.

Sec. 62.22 specifies the proceedings to be followed in the laying out of an ordinary street. Sec. 62.23 does not supplement the provisions of sec. 62.22 nor does it furnish an alternative plan for the accomplishment of exactly the same purpose that is comprehensively provided for in sec. 62.22. The history of sec. 62.23 shows quite conclusively that it relates to an independent subject. That subject is the rather comprehensive one of city planning. In so far as the laying out of city streets constitutes a part of city planning, there may be some duplication in the two sections. However, the fact of such duplication will not lead us astray if we keep in mind the dominant purpose of sec. 62.23.

The idea of city planning found its first concrete expression in the legislature of 1909, when resolution No. 38 proposed an amendment to the constitution, which was ratified in 1912, and now appears as sec. 3a of art. XI of the state constitution. It provides as follows:

"The state or any of its cities may acquire by gift, purchase, or condemnation lands for establishing, laying out, widening, enlarging, extending, and maintaining memorial grounds, streets, squares, parkways, boulevards, parks, playgrounds, sites for public buildings, and reservations in and about and along and leading to any or all of the same; and

after the establishment, layout, and completion of such improvements, may convey any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate, so as to protect such public works and improvements, and their environs, and to preserve the view, appearance, light, air, and usefulness of such public works."

At the same session of the legislature was enacted ch. 162, providing for the creation and organization of a commission on the city plan by the common council of every city of the first, second, and third class, to consist of the persons therein specified. This chapter is very much the same as the present sec. 62.23 (1), (2), and (3). One section of the law— now sec. 62.23 (3)—contains language exactly the same as the language of the constitutional amendment, but it is obvious that the legislation was enacted for the purpose of accomplishing the results which it was intended to relieve from constitutional objections by the constitutional amendment. While the constitutional amendment, as well as the provision of the statute referred to, provides that "The state or any of its cities may acquire by gift, purchase, or condemnation lands for establishing . . . streets," etc., it is apparent that it was not the fundamental purpose of the law to confer power to acquire streets. That power already existed, and this language is but a preamble or introduction to the purpose sought to be accomplished, as revealed later in the provision, and that was that they might acquire not only the land necessary for the street or other public improvements therein mentioned, but that they might acquire "reservations in and about and along and leading to any or all of the same; and after the establishment, layout, and completion of such improvements, may convey any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate, so as to protect such public works and improvements, and their environs, and to preserve the view,

appearance, light, air, and usefulness of such public works." That is the purpose for which the constitutional amendment was thought necessary. The purpose of the constitutional amendment and the legislation was not to enable cities to accomplish those things which they already had the power to accomplish, but to enable them to correlate and systematize their public improvements and protect them in their settings and environments. It was for the purpose of encouraging an orderly development of the city and was prompted by æsthetic rather than practical considerations. This purpose becomes more evident when we find that the zoning law, a phase of "city planning," was made a part of this section. Now sub. (14) of this section, which is the only authority the city is able to find to justify the practice followed by it in assessing the special benefits, expressly limits its application to the expense of acquiring "under any plan adopted by the common council pursuant to this section or section 27.11." The mere fact that sub. (2) of the section requires the common council to refer to the city plan commission the location or extension of a street before final action is taken, does not bring every location or extension of a street within the purview of sec. 62.23. It is apparent that the purpose of this requirement is to enable the city plan commission to advise the common council concerning the effect of such location or extension upon the general city plan and to preserve that plan from ill-considered interference.

Inasmuch as the provisions of sec. 62.23 (14) have no application to improvements such as the one here involved, and in view of the fact that that is the only authority which the city can find to justify the procedure followed in making the special assessment here challenged, it follows that the demurrer to the complaint should have been overruled.

*By the Court.*—Order reversed, and cause remanded with instructions to overrule the demurrer to the complaint.